Dear Mr. Durant:
You have requested an opinion of the Attorney General regarding the Poverty Point Reservoir District (District). The District was created as a political subdivision of the state by Act 888
of the 1992 Regular Session of the Louisiana Legislature (LSA-R.S. 38:3087.1-3087.15), and placed under the supervision of the Department of Transportation and Development (DOTD). LSA-R.S. 36:509(Q).
The District was appropriated funds in the 1991 and 1992 Capital Outlay Budgets. According to the State Treasurer, there are approximately One Hundred Sixty Thousand and 00/100 ($160,000.00) Dollars in unencumbered funds for which bonds have been sold that are available for District projects.
The District, by resolution, has requested DOTD to release these unencumbered funds to enable it to drawdown said funds in one lump sum for expenditure within 45 — 60 days.
Section V of Acts 1013 of the 1991 Regular Session and 888 of the 1992 Regular Session reads in pertinent part:
 "Payment to state agencies for projects specified in this Act must be made by warrant submitted to the division of administration only to the extent of funds required for immediate payment. Copies of invoices or other supporting documentation shall be submitted upon request by the division of administration." (Emphasis added.)
As can be gleaned from the above language, payment for capital outlay projects is predicated on the submission of warrants, but only to the extent funds are required for immediate payment. The Division of Administration may also require the submission of invoices to verify expenditures.
In Attorney General Opinion No. 90-346, one of the issues presented was the amount of moneys that could be drawn down to fund projects listed in the Transportation Infrastructure Model for Economic Development Account. The author concluded:
 "As to the amount of monies which can be drawn, your office has historically required that requests for cash drawdowns for capital outlay projects be accompanied by the documentation necessary, including invoices, to show that there is an actual cash need for funds at that time."
It is our opinion that the "immediate payment" wording of Section 5, quoted supra, anticipates the existence of a bill that is due and payable, preferably evidenced by a corresponding invoice. This process better insures that public funds are expended in accordance with law and for the purpose for which they are appropriated.
In addition, under the terms of the Arbitrage and Use of Proceeds Certificate issued simultaneously with the issuance and delivery of the general obligation bonds, the Director of the State Bond Commission certified that the state will comply with the terms of Section 148 of the Internal Revenue Code of 1986, as amended, and the regulations applicable thereto, particularly with respect to arbitrage rebate. Section 148 provides for penalties against the state in the event of noncompliance. It would be difficult to ensure compliance with the arbitrage regulations if the Treasurer is not in control of the funds.
In light of the above, and mindful of the legal tenet that the interpretation of a statute by those charged with its administration must be given substantial weight, we see no legal justification in this case for the Treasurer to depart from her policy regarding drawdowns for Capital Outlay projects — i.e., that requests be accompanied by appropriate documentation to demonstrate that there is an actual cash need for funds at that time. See Cooper Stevedoring Company, Inc. v. Secretary of the Louisiana Department of Revenue and Taxation, 555 So.2d 32
(La.App. 1st Cir. 1989).
Accordingly, it is our opinion that payment to the District should be predicated on the submission of warrants, but only to the extent funds are required for immediate payment.
Trusting this adequately responds to your request, I am,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb 0107R
cc: Hon. Mary L. Landrieu Hon. William R. Coenen